```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ALABAMA
                       NORTHEASTERN DIVISION
```

FILED
03 NOV 24 PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| ROBERT DAVID TAYLOR, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. CV-03-S-2663-NE |
| THE HUNTSVILLE/MADISON COUNTY CHAMBER OF COMMERCE; and THE NORTHEAST ALABAMA REGIONAL SMALL BUSINESS DEVELOPMENT CENTER, | ) | |
| Defendants. | ) | |

ENTERED

## MEMORANDUM OPINION

The motions addressed in this opinion require the court to first clarify muddled pleadings. To begin with, the first unnumbered paragraph of the complaint commencing this action, as well as numbered paragraph "1" on page 2 of the same pleading, both clearly allege that plaintiff, Robert David Taylor, is "a former employee of the Small Business Development Center, a consortium comprised of the University of Alabama at Huntsville, Alabama A & M University, and the Huntsville/Madison County Chamber of Commerce."[1]

Paragraphs 9 and 11 of the original complaint appear to contradict the foregoing allegations, however, because both paragraphs state that plaintiff was *not* employed by the so-called "Small Business Development Center," but instead by the University of Alabama

---

[1] Complaint (doc. no. 1), at 1; *see also id.* ¶ 1, at 2 (stating that plaintiff "was employed by the Small Business Development Center ('the **CENTER**'), a consortium comprised of the University of Alabama at Huntsville, Alabama A & M University, and the Huntsville/Madison County Chamber of Commerce") (boldface emphasis in original).

1



at Huntsville ("UAH"), *or* by Alabama A & M University ("A&M"), *or* by the Huntsville/Madison County Chamber of Commerce ("the CHAMBER"), *or* by all of the foregoing entities.

> 9. **TAYLOR** [*i.e.*, plaintiff, Robert David Taylor] was employed by **UAH, A&M,** *and* the **CHAMBER** from March 1998 until September 28, 2001. During his employment his position was that of Director of *the Northeast Alabama Regional Small Business Development Center* ("the **CENTER**").
>
> 10. All of the employees of the **CENTER** work on a yearly contract, with contracts renewed at the beginning of each fiscal year.
>
> 11. The **CENTER** *is a consortium of employees from* **UAH, A&M,** *and* the **CHAMBER**.
>
> 12. The **CENTER** is contracted with to do a certain quantity of work in a given year, with funding coming from the above organizations as well as the U.S. Small Business Administration and the Department of Defense.[2]

The complaint then goes on to describe a series of personnel problems that plaintiff had experienced with an A & M employee named Cheryl George, and a UAH employee named Patsy Nayman, both of whom (apparently) had been assigned by their respective universities to work under plaintiff's supervision at the Northeast Alabama Regional Small Business Development Center.

> 21. On *May 8,* 2001, **TAYLOR** presented **BILLINGS** [*i.e.*, Dr. C. David Billings, Dean of UAH's College of Administrative Sciences and a member of the Center's Board of Directors] with information and documentation relating to false accusations by **UAH** employee Patsy Nayman and her collusion with Ms. George in altering auditable **CENTER** records to support

---

[2] *Id.* ¶¶ 9-12, at 3 (boldface emphasis in original, italicized emphasis added).

false claims and accusations against **TAYLOR**. **TAYLOR** requested assistance in transferring Ms. Naman to another **UAH** office. **BILLINGS** did not act to investigate the complaint of altering records as required by the **UAH** Staff Handbook or act to transfer Ms. Nayman.

22. On *May 5*, 2001, **TAYLOR** was given a performance review, **his first in six years**, to complete and submit by May 25, 2001.

22.[sic] On May 23, 2001, **TAYLOR** met with his contract administrator, Val Seaquist, and explained the entirety of the issues concerning Ms. George and his actions in response. She affirmed that he had taken the proper action.

23. On June 1, 2001, Ms. George announced her retirement. On June 15, 2001, Ms. George left employment with the **CENTER** and **A&M**.

24. On June 15, 2001 **TAYLOR** was asked to meet with the **CENTER**'s board (**BILLINGS, JONES** [*i.e.*, Dr. Barbara A.P. Jones, Dean of A & M's School of Business], and **THOMPSON** [*i.e.*, Mr. Jeff Thompson, Chief Operating Office of the Chamber]). On June 18, 2001, they informed **TAYLOR** that his work performance had been reviewed and found to be unsatisfactory due to the personnel problems he had experienced in the department. **TAYLOR** was informed that his contract of employment *would not be renewed*.

24.[sic] The decision to terminate **TAYLOR's** employment was influenced by the personal vulnerability of **BILLINGS** and **THOMPSON** to EEOC threats made by Ms. George concerning her claimed promotion. **TAYLOR's** termination was used to placate Ms. George and to protect **BILLINGS** and **THOMPSON** from any future legal actions initiated by Ms. George.

25. The authority and responsibility for the operation, management, control, supervision, maintenance, regulation and improvement of the **CENTER** was vested in Defendants **BILLINGS, JONES,** and **THOMPSON** by Defendants **UAH** and **A&M**.

26. Defendants **BILLINGS, JONES,** and **THOMPSON** acted in an arbitrary and capricious manner and contrary to the guidelines established in the **UAH** Staff Handbook, in terminating **TAYLOR's** employment.

3

>   27. Defendants **UAH**, **A&M**, and the **CHAMBER** ratified the conduct of Defendants **BILLINGS, JONES**, and **THOMPSON** by not taking steps to stop and/or correct the same.
>
>   28. Plaintiff appealed his termination through proper administrative channels at **UAH**. Dr. Frank Franz, President of **UAH**, denied his appeal, terminating plaintiff effective September 30, 2001.[3]

Plaintiff's original complaint asserted three claims against five defendants: *i.e.*, (1) the Board of Trustees of the University of Alabama; (2) the Board of Trustees of Alabama A & M University; (3) Dr. C. David Billings individually, and in his official capacity as Dean of the UAH College of Administrative Sciences; (4) Dr. Barbara A.P. Jones individually, and in her official capacity as Dean of the A&M School of Business; and (5) Mr. Jeff Thompson individually, and in his official capacity as Chief Operating Office of the Huntsville/Madison County Chamber of Commerce. The first two counts were based upon 42 U.S.C. §§ 1981 and 1983.

Count One alleged that these defendants terminated plaintiff's employment "in retaliation for his legitimate exercise of his rights to free speech" under the First and Fourteenth Amendments to the United States Constitution. Count Two asserted that plaintiff was deprived procedural due process in violation of the Fourteenth Amendment. The third and final count alleged a supplemental, state-law claim for breach of contract. In pertinent part, Court Three read as follows:

>   38. In terminating **TAYLOR's** employment Defendants failed to follow established guidelines as set forth in the **UAH** Staff Handbook. In

---

[3] Complaint (doc. no. 1), at 5-6 (boldface emphasis in original; italicized emphasis added).

addition, **TAYLOR** was not provided performance reviews as required.

39. **TAYLOR**'s contractual rights were violated, as aforesaid.

Plaintiff's Complaint (doc. no. 1), at 8-9 (boldface emphasis in original); *see also* 28 U.S.C. § 1367(a).

On October 24, 2003, a motion to dismiss was filed jointly by the Board of Trustees of the University of Alabama and Dr. C. David Billings.[4] On October 30, 2003, the court ordered plaintiff to respond to that motion, in writing, no later than November 13, 2003.[5]

Plaintiff responded as ordered, but in an unusual way. He filed two pleadings on November 13, 2003. The first — his formal response to the motion to dismiss — stated only that he

> has submitted this day an Amended Complaint naming as Defendants the Northeast Alabama Regional Small Business Development Center and the Huntsville/Madison County Chamber of Commerce. All other parties to this action have been deleted from the style of the Amended Complaint, *which contains one count for breach of contract. By this action, the Plaintiff voluntarily dismisses the Board of Trustee of the University of Alabama, The Board of Trustees of Alabama A & M University, Dr. C. David Billings, Dr. Barbara A.P. Jones, and Mrs. Jeff Thompson from this litigation.*[6]

Simultaneously, plaintiff submitted, and the Clerk accepted and stamped as "filed," an Amended Complaint seeking "declaratory and injunctive relief, compensatory damages, and

---

[4] Doc. no. 9.

[5] Doc. no. 12. Subsequently, on November 17, 2003, the Board of Trustees of Alabama A & M University and Dr. Barbara A. P. Jones also filed a motion to dismiss (doc. no. 18), but that motion is not of immediate concern.

[6] Doc. no. 16 (emphasis supplied).

such other and further relief as to which [plaintiff] is entitled"[7] for an alleged breach of contract by the only two defendants sued in the amended complaint. In pertinent part, the amended complaint and its only claim read as follows:

> 22. On June 15, 2001 **TAYLOR** was asked to meet with the **CENTER's** board (Mr. Thompson, Dr. Billings, and Dr. Jones). On June 18, 2001, they informed **TAYLOR** that his work performance had been reviewed and found to be unsatisfactory due to the personnel problems he had experienced in the department. **TAYLOR** was informed that his contract of employment *would not be renewed.*
>
> 23. The decision to terminate **TAYLOR's** employment was influenced by the personal vulnerability of Dr. Billings and Mr. Thompson to EEOC threats made by Ms. George concerning her claimed promotion. **TAYLOR's** termination was used to placate Ms. George and to protect Dr. Billings and Mr. Thompson from any future legal actions initiated by Ms. George.
>
> 24. The authority and responsibility for the operation, management, control, supervision, maintenance, regulation and improvement of the **CENTER** was vested in Dr. Billings, Dr. Jones, and Mr. Thomspson [sic].
>
> 25. Dr. Billings, Dr. Jones, and Mr. Thompson acted in an arbitrary and capricious manner and contrary to the guidelines established in the UAH Staff Handbook in terminating **TAYLOR's** employment.
>
> 26. Defendants the **CENTER** and the **CHAMBER** ratified the conduct of Dr. Billings, Dr. Jones, and Mr. Thompson by not taking steps to stop and/or correct the same.
>
> 27. Plaintiff appealed his termination through proper administrative channels at UAH. Dr. Frank Franz, President of UAH, denied his appeal, terminating plaintiff effective September 30, 2001.

## COUNT ONE

---

[7] Amended Complaint (doc. no. 17), at 1 ("Preliminary Statement").

## BREACH OF CONTRACT

28. Plaintiff adopts and realleges each and every allegation contained in this complaint as if set out herein, anew.

29. In terminating **TAYLOR's** employment Defendants failed to follow established guidelines as set forth in the UAH Staff Handbook. In addition, **TAYLOR** was not provided performance reviews as required as part of the terms and conditions of his employment.

30. **TAYLOR's** contractual rights were violated, as aforesaid.

**WHEREFORE, PREMISES CONSIDERED**, plaintiff demands judgment against defendants, separately and severally, for compensatory damages in an amount that is just and appropriate as determined by a struck jury, plus such other and further relief as to which he may be entitled.[8]

## I. DISCUSSION

Plaintiff's intention when filing his Amended Complaint on November 13, 2003 was that of voluntarily dismissing his action against five defendants: (i) the Board of Trustees of the University of Alabama; (ii) The Board of Trustees of Alabama A & M University; (iii) Dr. C. David Billings; (iv) Dr. Barbara A.P. Jones; and (v) Mr. Jeff Thompson.[9] Procedurally, however, the voluntary dismissal of actions, or claims within an action, should be accomplished pursuant to Federal Rule of Civil Procedure 41(a), providing that:

(a) **Voluntary Dismissal: Effect Thereof.**
(1) **By Plaintiff; by Stipulation.** Subject to the provisions of Rule

---

[8] *Id.* at 5-6 (boldface emphasis in original).

[9] Indeed, plaintiff clearly stated that intention in his response to the motion to dismiss filed by the Board of Trustees of the University of Alabama and Dr. C. David Billings. *See* doc. no. 16, at 1 ("By this action, the Plaintiff voluntarily dismisses the Board of Trustee of the University of Alabama, The Board of Trustees of Alabama A & M University, Dr. C. David Billings, Dr. Barbara A.P. Jones, and Mrs. Jeff Thompson from this litigation.").

7

    23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

    **(2) By Order of Court**. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed.R.Civ.P. 41(a). Nevertheless, because none of the parties named as defendants to the claims asserted in plaintiff's original complaint had served either "an answer or . . . a motion for summary judgment" on the date plaintiff filed his response to the motion to dismiss and Amended Complaint, this court could, in a loose manner of speaking, construe his response and Amended Complaint as jointly constituting a notice of dismissal filed pursuant to Fed.R.Civ.P. 41(a)(1)(i).

  Such a construction, however, still leaves hanging the question of whether it was proper for him to submit, and for the Clerk to accept and stamp as "filed," an Amended Complaint without first obtaining permission of the court to do so. Federal Rule of Civil Procedure 15(a) permits a party to "amend the party's pleading once as a matter of course at

8

any time before *a responsive pleading* is served or, if the pleading is one to which no *responsive pleading* is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only be leave of court or by written consent of the adverse party. . . ." Fed. R. Civ. P. 15(a) (emphasis supplied). That language begs this question: *what constitutes a "responsive pleading"?* The answer is supplied by Federal Rule of Civil Procedure 7, which draws a distinction between "pleadings" and "motions and other papers":

> **(a) Pleadings**. There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.
>
> **(b) Motions and Other Papers**.
> **(1)** An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.
> **(2)** The rules applicable to captions and other maters of form of pleadings apply to all motions and other papers provided for by these rules.
> **(3)** All motions shall be signed in accordance with Rule 11.
>
> **(c) Demurrers, Pleas, etc., Abolished**. Demurrers, pleas, and exceptions for insufficiency of a pleading shall not be used.

Fed. R. Civ. P. 7. It follows from these distinctions that no "motion" is a "pleading" within the definition of Rule 7(a), nor a "responsive pleading" within the meaning of Rule 15(a). The Fifth Circuit so held in *Zaidi v. Ehrlich*, 732 F.2d 1218 (5th Cir. 1984), saying:

> The term "responsive pleading" should be defined by reference to the definition of "pleading" in Rule 7(a), which includes neither a motion to dismiss nor a motion for summary judgment. Fed.R.Civ.P. 7(a); 3 Moore's Federal Practice ¶ 15.07[1], at 15–45; 6 C. Wright A. Miller, Federal Practice and Procedure § 1483, at 411-12 (1971). Accordingly, neither a motion to dismiss or a motion for summary judgment extinguishes a plaintiff's right to amend a complaint. *McClellan v. Mississippi Power and Light Co.*, 526 F.2d 870, 872 n.2 (5th Cir. 1976), *modified on other grounds*, 545 F.2d 919 (5th Cir. 1977) (en banc) (motion to dismiss); *LaBatt v. Twomey*, 513 F.2d 641, 650 (7th Cir. 1975) (motion for summary judgment); *Miller v. American Export Lines, Inc.*, 313 F.2d 218 (2d Cir. 1963) (motion for summary judgment).

*Zaidi v. Ehrlich*, 732 F.2d at 1219-20; *see also Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 682 F. Supp. 1186, 1189 (N.D. Ala. 1988) (same).

The court therefore exercises its discretion to look through plaintiff's procedural shortcuts, if they may be so characterized, to the substance of his response and amended complaint, and an appropriate order dismissing all of his claims against the following defendants will be entered contemporaneously herewith: (i) the Board of Trustees of the University of Alabama; (ii) The Board of Trustees of Alabama A & M University; (iii) Dr. C. David Billings; (iv) Dr. Barbara A.P. Jones; and (v) Mr. Jeff Thompson.

That action will require the court, however, to confront the issue of whether it retains jurisdiction over plaintiff's only remaining claim.

This court acquired jurisdiction over plaintiff's action due to the federal question claims asserted in Counts One and Two of the original complaint. Yet, the only claim remaining following dismissal of those federal claims is plaintiff's state-law claim for breach of contract against the Northeast Alabama Regional Small Business Development Center and

the Huntsville/Madison County Chamber of Commerce, which is explicated in the text accompanying note 8 *supra*. In cases where a district court's jurisdiction originally is based solely upon federal questions, the court has discretion to entertain state claims that are supplemental to the federal claim. *See* 28 U.S.C. § 1367(a).[10] The district court may decline to exercise supplemental jurisdiction when:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court added a gloss to this statutory language in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), when observing that

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant [now "supplemental"] state-law claims. When

---

[10] 28 U.S.C. § 1367(a) provides that:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

11

> the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court *should decline* the exercise of jurisdiction by dismissing the case without prejudice.

*Id.* at 349-50, 108 S. Ct. at 618 (emphasis supplied) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent ["supplemental"] jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7, 108 S. Ct. at 619 n.7; *see also L.A. Draper & Son V. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (stating that "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims").

Here, plaintiff's federal claims have been eliminated at an early stage in the litigation, prior to the commencement of discovery. Additionally, plaintiff's state-law, breach-of-contract claim raises complex and novel issues of state law,[11] "something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake in this sensitive area." *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000).[12]

---

[11] As best this court can ascertain, the Alabama courts have not decided the specific issue of whether the provisions of a "Staff Handbook" issued by a state-supported university constitute a binding contract.

[12] When discussing the retention of jurisdiction over supplemental state law claims after all federal questions had been resolved, the Eleventh Circuit in *Nolin* said:

> At this time, the case retains no independent basis for federal jurisdiction and the only claims that remain deal with complex questions of discretionary function immunity in the state of Alabama. A proper resolution of the two state law causes of action will require a

12

Therefore, the balance of factors weigh in favor of declining supplemental jurisdiction, and this court will exercise its discretion to also dismiss plaintiff's state claim.

An appropriate order will be entered contemporaneously herewith.

DONE this **24th** day of November, 2003.

_____
United States District Judge

---

careful analysis of Alabama law — something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake in this sensitive area. *We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.*

*Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (emphasis supplied).